IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

-----------------------------------------------------------------X
C.H. ROBINSON COMPANY, INC.

      Plaintiff,

   - against –

MSC MEDITERRANEAN SHIPPING COMPANY
S.A.; GLOUCESTER TERMINALS LLC and HOLT
LOGISTICS

      Defendant.
-----------------------------------------------------------------X

C.A. #

**COMPLAINT**

Plaintiff, C. H. ROBINSON COMPANY, INC. by and through its attorneys, Deasey Mahoney & Valentini Ltd. and Casey & Barnett LLC, as and for its Complaint, alleges upon information and belief as follows:

## JURISDICTION

1. This is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure. Jurisdiction is predicated upon 28 U.S.C. §1333 and the provisions contained in the MSC bill of lading, which provides for jurisdiction in this District for cargo shipments that transit through the United States. Jurisdiction is also predicated upon 28 U.S.C. § 1367.

## PARTIES

2. At all material times, C. H. Robison Company, Inc. (hereinafter "CHR" or "Plaintiff") was and is a corporation with an office and place of business located at 14701 Charlson Road, Eden Prairie, MN 55347, and was the owner and consignee of five consignments of Fresh Grapes, as more specifically described below.

3. At all material times, defendant, MSC MEDITERRANEAN SHIPPING COMPANY S.A. (hereinafter "MSC" or "Defendant") was and is a corporation organized and existing by virtue of the laws of a foreign state with an office and place of business located at 700 Watermark Blvd, Mt. Pleasant, SC 29464, and at all relevant times, was and is still doing business within the jurisdiction of this Honorable Court as a common carrier of goods for hire.

4. At all material times, defendant GLOUCESTER TERMINALS LLC (hereinafter "Gloucester" or "Terminal Defendant") is a business entity duly organized and existing under the law with an office and place of business located at King & Essex Streets, Gloucester City, New Jersey 08030 and at all material times was acting as a marine terminal handling *inter alia*, container loads of import cargo, including fresh fruit requiring fumigation service.

5. At all material times, defendant HOLT LOGISTICS CORP (hereinafter "Holt" or "Terminal Defendant") is a business entity duly organized and existing under the law with an office and place of business located at 101 S. King Street, Gloucester City, New Jersey 08030, and at all material times was acting as a marine terminal handling, *inter alia*, container loads of import cargo, including fresh fruit requiring fumigation services. Upon information and belief, Holt Terminal controls and or operates Gloucester Terminals.

6. Plaintiff brings this action on its own behalf and as agent and/or trustee on behalf of and for the interest of all parties who may be or become interested in the said consignments, as their respective interests may ultimately appear, and plaintiff is entitled to maintain this action.

## RELEVANT FACTS

7. In or about March 2022 cargo shipper Exportadora del Malpo Ltda. booked for transit with defendant MSC six container loads of Fresh Grapes for transit from Chile to Philadelphia, Pennsylvania.

2

8. On or about March 25, 2022, a consignment consisting of 1800 Cases Fresh Grapes, laden in refrigerated container BMOU 9012724, then being in good order and condition, was delivered to MSC and/or its agents in Valparaiso, Chile. The cargo was booked for transit on board the M/V MSC CAROLE in Valparaiso destined for Philadelphia, Pennsylvania, all in consideration of an agreed upon freight, and in consideration of MSC maintaining a supply air temperature of -1.0°C at all times, and all pursuant to MSC bill of lading MEDUD2423694 dated April 4, 2022.

9. On or about March 25, 2022, a consignment consisting of 1800 Cases Fresh Grapes, laden in refrigerated container CRLU 7228987, then being in good order and condition, was delivered to MSC and/or its agents in Valparaiso, Chile. The cargo was booked for transit on board the M/V MSC CAROLE in Valparaiso destined for Philadelphia, Pennsylvania, all in consideration of an agreed upon freight, and in consideration of MSC maintaining a supply air temperature of -1.0°C at all times, and all pursuant to MSC bill of lading MEDUD2423991 dated April 4, 2022.

10. On or about March 25, 2022, a consignment consisting of 1800 Cases Fresh Grapes, laden in refrigerated container MEDU 9104293, then being in good order and condition, was delivered to MSC and/or its agents in Valparaiso, Chile. The cargo was booked for transit on board the M/V MSC CAROLE in Valparaiso destined for Philadelphia, Pennsylvania, all in consideration of an agreed upon freight, and in consideration of MSC maintaining a supply air temperature of -1.0°C at all times, and all pursuant to MSC bill of lading MEDUD2420542 dated April 4, 2022.

11. On or about March 26, 2022, a consignment consisting of 1800 Cases Fresh Grapes, laden in refrigerated container CXRU 1013646, then being in good order and condition,

was delivered to MSC and/or its agents in Valparaiso, Chile. The cargo was booked for transit on board the M/V MSC CAROLE in Valparaiso destined for Philadelphia, Pennsylvania, all in consideration of an agreed upon freight, and in consideration of MSC maintaining a supply air temperature of -1.0°C at all times, and all pursuant to MSC bill of lading MEDUD2423975 dated April 4, 2022.

12. On or about March 24, 2022, a consignment consisting of 1800 Cases Fresh Grapes, laden in refrigerated container TGHU 9968248, then being in good order and condition, was delivered to MSC and/or its agents in Valparaiso, Chile. The cargo was booked for transit on board the M/V MSC CAROLE in Valparaiso destined for Philadelphia, Pennsylvania, all in consideration of an agreed upon freight, and in consideration of MSC maintaining a supply air temperature of -1.0°C at all times, and all pursuant to MSC bill of lading MEDUD2420633 dated April 4, 2022.

13. On or about March 22, 2022, a consignment consisting of 2160 Cases Fresh Grapes, laden in refrigerated container TTNU 8329407, then being in good order and condition, was delivered to MSC and/or its agents in Valparaiso, Chile. The cargo was booked for transit on board the M/V MSC CAROLE in Valparaiso destined for Philadelphia, Pennsylvania, all in consideration of an agreed upon freight, and in consideration of MSC maintaining a supply air temperature of -1.0°C at all times, and all pursuant to MSC bill of lading MEDUD2420997 dated April 4, 2022.

14. Grapes are a perishable commodity and are required to be maintained at proper conditions of temperature and atmosphere. The grapes also need to be fumigated prior to entry into the United States and the temperature of the cargo must be raised at the proper time prior to fumigation in order to provide for the fumigation.

15. The grapes cannot be released for entry into the United States to the cargo receiver until fumigation is completed and the cargo is released by the USDA.

16. The six containers were loaded on board the M/V MSC CAROLE on or about April 1, 2022, and the vessel sailed for her intended destination on or about April 2, 2022.

17. On or about April 11, 2022, the six containers were discharged in Colon, Panama for purposes of transshipment.

18. The six containers were loaded on board the M/V MSC CELENE in Colon, Panama on or about April 13, 2022 and the vessel departed for her intended destination on or about April 14, 2022.

19. MSC issued an Arrival Notice to plaintiff on April 15, 2022, informing that the vessel was due to arrive in Philadelphia and discharge her cargo on April 19, 2022.

20. Notwithstanding the foregoing, the M/V MSC CELENE did not berth at the Gloucester Marine Terminal in Gloucester, New Jersey until May 5, 2022. The Gloucester Marine Terminal is operated by Gloucester Terminals LLC and/or Holt Logistics Corp.

21. The six containers remained at Gloucester Marine Terminal until May 16, 2022 when the cargoes were fumigated and thereafter released for import into the United States by the USDA.

22. Gloucester Terminals and/or Holt Logistics had possession, custody and control of the six containers after discharge from the M/V MSC CELENE and they failed to timely and promptly conduct fumigation services on the CH Robinson containers.

23. MSC, Gloucester Terminals and Holt Logistics had solicited exporters, importers and shippers of grapes from Chile, including Plaintiff, to utilize their vessels and /or marine terminals for the importation of the grapes into the United States, making certain representations

5

as to their abilities to properly and timely handle or perform the requirements for the importation, including the adequacy of their Vessels and routes, and facilities to provide for the timely transportation, handling, fumigation and delivery of the cargo to the consignees.

24. Gloucester Terminals and Holt Logistics owned and/or operated the facilities at which the six containers were discharged and/or fumigated after discharge from the ocean vessel and before delivery of the cargo to the Plaintiff.

25. Gloucester Terminals, Holt Logistics and/or MSC arranged for and/or coordinated and/or performed the fumigation of the cargo, including the scheduling of the fumigation and the delivery, staging and handling and fumigation of the cargo, and thereafter delivery to the Plaintiff.

26. For the subject shipment, MSC and its subcontractors, including the marine terminals in the port of Philadelphia, were given instructions, and/or knew or should have known, as to the proper care of the subject cargo, including the appropriate conditions of temperature and atmosphere at which the cargo was to be maintained during transportation and after discharge prior to and during fumigation. Moreover, said defendants were aware that Fresh Grapes are a perishable commodity with a limited shelf life.

27. Due to the perishable nature of the cargo of grapes, MSC and its subcontractors, including the marine terminals in the port of Philadelphia, were obligated to promptly provide ocean transportation and perform, or provide for the performance of, timely and proper fumigation of the cargo prior to the delivery of the cargo to the Plaintiff.

28. MSC was obligated to properly plan the voyages and cargoes on board its vessels and to give timely and proper notice to its subcontracting marine terminal partners of the

anticipated cargo shipments, so that all could perform the prompt fumigation and delivery of the cargoes after discharge from the ocean vessel.

29. MSC was obligated to arrange for and have in place adequate port facilities and cargo storage, handling and fumigation facilities to arrange and provide for the prompt delivery of the cargo to the consignees without delay.

30. MSC and the Terminal Defendants failed to properly plan for and to have in place adequate facilities to provide for the prompt fumigation of the cargo and/or failed to schedule the shipments and cargo so as to provide for prompt fumigation and delivery of the cargo to the Plaintiff and/or failed to advise, inform or warn the shippers of foreseeable limitations on their abilities to provide adequate fumigation facilities and/or their inability to promptly provide for and /or perform prompt fumigation and delivery of the cargo to the Plaintiff.

31. MSC and the Terminal Defendants failed to have in place adequate procedures and fumigation facilities to provide for the prompt fumigation of the cargo.

32. The failure of MSC and the Terminal Defendants to properly maintain and timely adjust the temperature of the cargo prior to fumigation caused the perishable cargo to sustain damage and the Plaintiffs to sustain losses as a result thereof.

33. MSC and the Terminal Defendants failed to establish, observe and enforce just and reasonable regulations and practices relating to or connected with receiving, handling, storage and delivering the cargo, as required by 46 U.S.C.S. § 41102(c) and violated the requirements of 46 C.F.R. § 545.4(d).

34. MSC and the Terminal Defendants knew and were aware of the Plaintiff's need for the proper and timely fumigation and delivery of the cargo and failed to exercise due and proper care in performing these services.

35. As a result of the foregoing, the five consignments of Fresh Grapes were not in the same good order and condition as when first received by defendant, but instead had suffered physical damage while in said defendant's care, custody and control.

36. The damage to the cargo was not the result of any act or omission of the plaintiff but, to the contrary, was due solely as the result of the negligence, fault, neglect, breach of contract of carriage, and bailment on the part of the defendant and/or its agents.

37. As a result of the foregoing, Plaintiff suffered incurred expenses and reduced sales on each of the six consignments as follows:

| | |
|---|---|
| BMOU 9012724 | $50,077.68 |
| CRLU 7228987 | $49,088.76 |
| CXRU 1013646 | $49,425.37 |
| TGHU 9968248 | $38,007.46 |
| MEDU 9104293 | $50,084.91 |
| TTNU 8329407 | $5,777.52 |

38. By reason of the foregoing, Plaintiff has sustained losses which will be shown with specificity at trial, no part of which has been paid, although duly demanded, which are presently estimated to be $242,461.70.

## AS AND FOR A FIRST CAUSE OF ACTION – MSC

39. Plaintiff repeats, reiterates and realleges each and every allegation set forth in paragraphs 1 through 38, inclusive, as if herein set forth at length.

40. Pursuant to the contract of carriage entered into by and between the parties, the Defendant owed contractual and statutory duties to the aforementioned cargo owner to carry,

bail, keep and care for, protect and deliver the Plaintiff's cargo in the same good order and condition as at the time said Defendant first accepted custody and control of the goods.

41. The Defendant breached its contractual and statutory duties by failing to properly carry, bail, keep and care for, protect and deliver the Plaintiff's cargo in the same good order and condition as at the time said Defendant first accepted custody and control of the goods.

42. As a direct and proximate result of said breach of contract by Defendant, the Plaintiff has suffered damages presently estimated to be no less than $242,461.70.

43. By reason of the foregoing, Plaintiff has sustained losses which will be shown with specificity at trial, no part of which has been paid, although duly demanded, which are presently estimated to be no less than $242,461.70.

## AS AND FOR A SECOND CAUSE OF ACTION – TERMINAL DEFENDANTS

44. Plaintiff repeats, reiterates and realleges each and every allegation set forth in paragraphs 1 through 38, inclusive, as if herein set forth at length.

45. Greenwich and Holt were marine terminal operators, warehousemen and bailees for hire of the aforementioned cargo.

46. The cargo was in good order and condition when delivered into the custody and control of the Terminal Defendants but was not in the same good order and condition when delivered by the Terminal Defendants to the Plaintiff.

47. Terminal Defendants agreed and were required, but failed to, take good and proper care of Plaintiff's cargo while in their possession and control, to promptly arrange for and transport the cargo to fumigation facilities, to handle, stage and deliver the cargo for and after fumigation, to provide timely fumigation services, to provide adequate fumigation facilities to

maintain the cargo at the proper temperature and atmospheric conditions, and to redeliver the goods to Plaintiff in a prompt manner upon demand.

48. Plaintiff relied on the Terminal Defendants' agreements, representations and warranties in having their cargo delivered to the Port of Philadelphia and to Terminal Defendants for storage, handling and fumigation.

49. Terminal Defendants breached their obligations as marine terminal operators, warehousemen and bailees for hire and are liable for the damages sustained to Plaintiff's cargo.

50. Said failures by Terminal Defendants caused Plaintiff to sustain damages in the amount of $242,461.70.

## AS AND FOR A THIRD CAUSE OF ACTION – <u>TERMINAL DEFENDANTS</u>

51. Plaintiff repeats, reiterates and realleges each and every allegation set forth in paragraphs 1 through 38, inclusive, as if herein set forth at length.

52. The loss of or damage to Plaintiff's cargo was caused by the negligence, carelessness and recklessness of the Terminal Defendants through their servants, agents, workmen and /or employees.

53. By reason of the negligence, carelessness and recklessness of the Terminal Defendants, Plaintiff has sustained damages in the amount of $242,461.70.

## AS AND FOR A FOURTH CAUSE OF ACTION – <u>TERMINAL DEFENDANTS</u>

54. Plaintiff repeats, reiterates and realleges each and every allegation set forth in paragraphs 1 through 38, inclusive, as if herein set forth at length.

55. The loss or damage to Plaintiff's cargo was caused by the breach of contract of handling, transportation, storage and fumigation on the part of the Terminal Defendants through their servants, agents, workmen and/or employees.

56. By reason of the breach of contract as aforesaid, Plaintiff has sustained damages in the amount of $242,461.70.

### AS AND FOR A FIFTH CAUSE OF ACTION – TERMINAL DEFENDANTS

57. Plaintiff repeats, reiterates and realleges each and every allegation set forth in paragraphs 1 through 38, inclusive, as if herein set forth at length.

58. The loss of or damage to Plaintiff's cargo was caused by the breach of the Terminal Defendant's obligations as logistics brokers and service providers.

59. By reason of the aforesaid breaches, Plaintiff has sustained damages in the amount of $242,461.70.

### AS AND FOR A SIXTH CAUSE OF ACTION – TERMINAL DEFENDANTS

60. Plaintiff repeats, reiterates and realleges each and every allegation set forth in paragraphs 1 through 38, inclusive, as if herein set forth at length.

61. The loss of or damage to Plaintiff's cargo was caused by the breach of the Terminal Defendants' warranty of workmanlike performance.

62. By reason of the aforesaid breaches, Plaintiff has sustained damages in the amount of $242,461.70.

**WHEREFORE,** Plaintiff prays:

1. That process in due form of law may issue against Defendants citing them to appear and answer all and singular the matters aforesaid;

2. That judgment may be entered in favor of Plaintiff against Defendants for the amount of Plaintiff's damages in the amount of at least $242,461.70 plus interest and costs; and

3. That this Court grant to Plaintiff such other and further relief as may be just and proper.

Dated: May 5, 2023
731-09

                                 **DEASEY MAHONEY & VALENTINI LTD**
                                 Attorneys for Plaintiff

                                 By: _____
                                 George Zacharkow
                                 1601 Market Street, Ste 3400
                                 Philadelphia, PA 19103
                                 gzarcharkow@dmvlawfirm.com
                                 Tel: 215-587-9400

Of Counsel:
Martin F Casey
Casey & Barnett LLC
305 Broadway, Ste 1202,
New York, NY 10007
Tel: 212-286-0225
Email: mfc@caseybarnett.com